IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEANNA BOWMAN,<br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF LANCASTER, MARK DALTON, MARK WILSON, KERRI KNEISLEY, AND CHRISTOPHER REED,<br>    Defendants. | :<br>:<br>: CIVIL ACTION NO.<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

## JURY TRIAL DEMANDED

**INTRODUCTION:**

1. This action is brought by Deanna Bowman to redress her deprivation of rights in contravention of 42 U.S.C. Section 1983 (Count I), violations of Title VII of the Civil Rights Act of 1964, as amended (Count II), violations of the Americans with Disabilities Act, as amended (Count III), Family Medical Leave Act (Count IV), and violations of the Pennsylvania Human Relations Act (Count V). In support of these claims, Deanna Bowman alleges:

**JURISDICTION AND VENUE:**

2. Original jurisdiction founded on the existence of a question arising under particular statutes. The action arises under 42 U.S.C. Section 1983 ("Section 1983"), and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and Americans with Disabilities Act, as amended, ("ADA/ADAA") and, Family Medical Leave Act ("FMLA").

3. Jurisdiction founded upon principles of pendent jurisdiction under 28 U.S.C. Section 1367, that authorizes the court to supplemental jurisdiction over any claims against parties that are part of the same controversy as the claim that provides the basis for the court's original jurisdiction.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum of one hundred thousand dollars.

5. The unlawful practices and harm complained of occurred in Lancaster County in the Commonwealth of Pennsylvania. Venue therefore lies in the Eastern District of Pennsylvania.

**PARTIES:**

6. Plaintiff is a citizen of Lancaster County in the Commonwealth of Pennsylvania. Plaintiff was employed by the County of Lancaster with offices located in the City of Lancaster, Pennsylvania. Plaintiff worked in the Office of Adult Probation and Parole Services for the County of Lancaster from April 2006 through April 18, 2013.

7. Defendant County of Lancaster is the municipal government for Lancaster County, Pennsylvania and was Plaintiff's employer. At all times relevant, Defendant County acted by and through all management, administrators, commissioners, directors, supervisors, staff, employees, and agents.

8. Defendant Mark Dalton is the District Court Administrator for Defendant County of Lancaster. Defendant Mark Dalton had oversight over Adult Probation and Parole Services for Lancaster County where Plaintiff worked. Defendant Dalton supervised Mark Wilson, the Chief of Adult Probation and Parole Services, and otherwise, he was a decision maker relative to Plaintiff's employment and separation from employment with the County of Lancaster. At all times relevant, Defendant Dalton acted for the County of Lancaster and/or acted individually on his own behalf.

9. Defendant Mark Wilson is the Chief of Adult Probation and Parole Services for Defendant County of Lancaster. Defendant Wilson managed Adult Probation and Parole

Services for Lancaster County and otherwise, he was a decision maker relative to Plaintiff's employment and separation from employment with the County of Lancaster. At all times relevant, Defendant Wilson acted for the County of Lancaster and/or acted individually on his own behalf.

10. Defendant Kerri Kneisley is the Deputy Chief of Adult Probation and Parole Services for Defendant County of Lancaster. Defendant Kneisley supervised Christopher Reed, the Plaintiff's direct supervisor, and otherwise, she was a decision maker relative to Plaintiff's employment and separation from employment with the County of Lancaster. Defendant Kneisley reported to Defendant Mark Wilson. At all times relevant, Defendant Kneisley acted for the County of Lancaster and/or acted individually on her own behalf.

11. Defendant Christopher Reed is Supervisor of the Collections Enforcement Unit for the Lancaster County Office of Adult Probation and Parole Services. Defendant Reed was Plaintiff's direct supervisor. Defendant Reed reported to Defendant Kerri Kneisley, Deputy Chief of Adult Probation and Parole Services for Defendant County of Lancaster. At all times relevant, Defendant Reed acted for the County of Lancaster and/or acted individually on his own behalf.

**CLAIMS:**

12. Plaintiff is a female born in 1972.

13. Plaintiff is disabled. Plaintiff suffers from fibromyalgia, bulging discs, and recurrent blood clots known as bilateral pulmonary emboli and popliteal thrombosis. Plaintiff had carpal and cubital tunnel repairs.

14. Plaintiff's disabilities affect her major life activities for lifting, performing manual tasks, reaching, sitting, standing, stooping, walking and generalized pain to her muscles and tissues from fibromyalgia.

15. Plaintiff is a member of protected classes for sex and disability.

16. On April 17, 2006, Plaintiff commenced employment with Defendant County of Lancaster. Plaintiff was initially hired as a Caseworker II for the then designated human services department that addressed mental health services in Lancaster County.

17. On or about May 2006, Plaintiff transferred to Adult Probation and Parole Services for Lancaster County and assumed the positon as Probations Officer Sr. in the Collections Enforcement Unit. The terms and conditions of employment are covered under agreement between Defendant Lancaster County and the Court-Appointed Professional Employees Bargaining Unit/Teamsters Local Union #771. See Bargaining Agreement at Exhibit A.

18. Adult Probation and Parole Services is subsumed under the Lancaster County Court. Defendant Mark Dalton is the District Court Administrator for Lancaster County with managerial oversight over Adult Probation and Parole Services for Lancaster County.

19. Defendant Mark Wilson is the Chief of Adult Probation and Parole Services for Lancaster County. Defendant Wilson reports to Defendant Mark Dalton, the District Court Administrator for Lancaster County.

20. Defendant Kerri Kneisley is the Deputy Chief for the Office of Administrative Services for Adult Probation and Parole Services for Lancaster County. Defendant Kneisley reports to Defendant Chief Mark Wilson.

21.     Plaintiff worked in the Collections Enforcement Unit within the Office of Administrative Services. Defendant Christopher Reed was Plaintiff's direct supervisor. Defendant Reed reported to Defendant Kerri Kneisley. See Probation and Parole Services Staff Structure 2012 attached Exhibit B.

22.     Plaintiff's performance as a Probation Officer Sr. in the Collections Unit was commendable and acceptable until Plaintiff disclosed disabilities and requested accommodations including leave from work and/or made requests for statutory leave under the Family Medical Leave Act. Thereafter, Plaintiff's conditions of employment changed and she was treated differently and disparately.

23.     November 2011, Plaintiff disclosed that she was diagnosed with bilateral pulmonary emboli and a left popliteal thrombosis resulting in blood clots behind her left knee and in both lungs. Plaintiff requested brief leave under FMLA. The leave was granted from on or about November 22, 2011 to December 26, 2011. Plaintiff returned to work on December 27, 2011.

24.     May 2012, Plaintiff disclosed that she was diagnosed with carpal tunnel in her left wrist and a torn tendon in her left elbow that required surgery. Plaintiff requested and her physician completed the paperwork for intermittent medical leave. Plaintiff had the surgery on May 22, 2012, and returned to work on May 29, 2012.

25.     On May 29, 2012, Plaintiff returned to work with restrictions including weight limits for pushing, pulling and lifting and no repetitive use of her left hand and left arm.

26.     Plaintiff's work conditions changed upon returning to work after surgery May 2012. She was subjected to higher and unrealistic expectations. Plaintiff's cases were not attended to or covered in plaintiff's absence. Upon return to work, Plaintiff was scolded,

reprimanded and retaliated against for taking medical leave. Plaintiff requested additional time to perform her work duties because she had the use of only one hand and one arm. The request was denied. Defendant Supervisor Christopher Reed threatened the plaintiff that if she could not do her job "a hundred percent, then she does not need to be there".

27. Defendants failed to engage in interactive discussion with the plaintiff and failed to accommodate her. The failure to accommodate caused Plaintiff's disabled hand to swell and discolor and otherwise delayed her recovery.

    a. Plaintiff was the target of cynicism and jokes because she was moving slower and laboriously. A co-worker joked "maybe they should break your other arm for an excuse to go home." Plaintiff reported the harassment to Defendant Kneisley and Defendant Wilson. The defendant managers told the plaintiff that they would "look into it" but failed to take remedial action.

28. Upon return to work, Plaintiff continued to receive treatment for the carpal tunnel and torn tendon. Plaintiff attended aftercare appointments and physical therapy. Plaintiff was under the impression that the FMLA paperwork for intermittent leave that she had submitted for the carpal tunnel and elbow had been approved. On the contrary, Defendant Kneisley informed the plaintiff that FMLA was not granted and the paperwork was shredded.

29. September 24, 2012, Defendant Reed issued the plaintiff corrective action for allegedly failing to manage her caseload. Defendants denied Plaintiff requested additional time and accommodation with review dates, phone calls and client visits. Defendant Reed specifically instructed staff "Not to help" the plaintiff.

30. Defendant Reed accorded preferential treatment to the similarly situated male co-workers in the Collections Enforcement Unit. The male co-workers did not have to complete the

same research and complete the same criteria and detail that the female Plaintiff and her female co-workers were instructed and expected to complete. The female employees were treated differently and disparately on the basis of their sex.

31. On or about October 24, 2012, Plaintiff disclosed to Defendant Kneisley that she was diagnosed with fibromyalgia. Plaintiff completed the forms for intermittent FMLA that was approved by Defendant County. Plaintiff's treating physician completed the medical certification for leave stating and notifying the defendants that the plaintiff was unable to perform and on leave under FMLA when the fibromyalgia condition exacerbates.

32. Closely aligned to notification that Plaintiff was diagnosed with fibromyalgia, on or about October 26 2012, Defendants issued the plaintiff a correction action for falling behind. Defendants placed the plaintiff on a ninety (90) days performance improvement plan laced with threats of disciplinary action and termination.

33. On or about November 9, 2012, Plaintiff was hurt in a motor vehicle accident. Plaintiff suffered injuries that rendered her unable to tolerate prolonged sitting, standing or walking for which the plaintiff submitted a FMLA form.

34. Plaintiff was on leave from the vehicle accident returning to work December 17, 2012. Defendants suspended Plaintiff on the day that she returned to work.

35. Plaintiff went out on leave December 21, 2012 returning to work January 29, 2013.

36. At all times, Plaintiff had earned and entitled leave time that she legitimately used with requisite medical certification.

37. Plaintiff's leave under the Family Medical Leave Act was protected coverage.

38.     December 21, 2012 and January 4, 2013, Plaintiff exerted her rights under the Bargaining Agreement and filed grievances relative to alleged unsatisfactory performance reviews and disciplinary action. Plaintiff complained and reported disability discrimination/retaliation and retaliation for "exercising my leave rights for medical reasons". See Grievance at Exhibit C.

39.     Plaintiff regularly presented medical restrictions and repeatedly requested accommodations. On January 28, 2013, Plaintiff submitted medical restrictions for weight limits, repetitive motions, and requested accommodations allowing the plaintiff opportunity to change position and perform therapeutic exercises when needed. The accommodations were denied. See restrictions and accommodations 1/28/13 at Exhibit D.

40.     On April 8, 2013, Plaintiff presented Defendant Kneisley a reasonable request for accommodations/modification of work conditions and a request for reassignment or transfer to another supervisor and director. Defendants failed to engage in interactive discussion. Plaintiff's requests for accommodations were denied without discussion or consideration. See Request Accommodations at Exhibit E.

41.     Defendants refused Plaintiff reasonable accommodation request, and additional requests, to extend the performance improvement plan notwithstanding Plaintiff's determination and obvious efforts to meet the plan objectives.

42.     Plaintiff's decline in work production and backlog was due to lost time at work correlated to Plaintiff's medical leaves protected under the FMLA and ADA/ADAA.

43.     Plaintiff submitted a Step 3 Grievance directly to Defendant Mark Dalton, the District Court Administrator, contesting disciplinary action and suspension in retaliation for

certified medical leaves as a result of disclosed disabilities. A copy of the Step 3 Grievance attached Exhibit F.

44. On April 17, 2013, Defendant Dalton denied the grievance and upheld the disciplinary action issued to her.

45. The following day, April 18, 2013, Defendant Kneisley terminated Plaintiff's employment with Defendant County of Lancaster accusing the plaintiff of willful poor performance.

46. Plaintiff's performance was not at issue until after Plaintiff notified the defendants of her disabilities and took medical leave.

47. Defendants replaced the plaintiff with a non-disabled male.

48. Plaintiff was able to perform the essential functions of her job with accommodation.

49. Defendants treated the plaintiff differently, disparately and adversely because she is a female.

50. Defendants treated the plaintiff differently, disparately and adversely because she is disabled.

51. Defendants subjected the plaintiff to a hostile work environment because she is disabled.

52. Defendants retaliated against the plaintiff for reporting a disability.

53. Defendants actions and inactions were based on Plaintiff's sex and/or disability and/or regarded as disabled.

54. Defendants acted separately and jointly.

55. Defendants denied the plaintiff equal protection, equal opportunity, and equal conditions of employment on the basis of her sex and/or disability.

56. Defendants actions to falsely accuse the plaintiff of negligent poor performance and to discharge the plaintiff were a pretext for discrimination.

57. Defendants failed to engage in interactive discussion. Defendants refused the plaintiff reasonable accommodations.

58. Defendants Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed together acted to conspire and violate Plaintiff's civil rights, interests, and protections pursuant to 42 U.S.C. Section 1983.

59. The actions and inactions by the defendants were willful.

60. Defendants Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed are each liable to the plaintiff in so far as each acted individually on his/her on behalf.

61. Defendants acted jointly and separately to discriminate and retaliate against the plaintiff on the basis of her sex, disability and/or regarded disability.

62. Defendants acted jointly and separately to discriminate and retaliate against the plaintiff because she requested accommodations and/or requested and took medical leave under FMLA.

63. Defendants acted jointly and separately to retaliate against the plaintiff for exerting protected rights under the Bargaining Agreement. Plaintiff filed grievances protesting unjust disciplinary action and unjust performance evaluations.

64. As a result of the defendants' joint and separate conduct, the plaintiff suffered harm and damages.

65. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. The plaintiff exhausted her administrative remedies. See Notices of Right to Sue attached at Exhibit G.

## COUNT I

## DEANNA BOWMAN V. COUNTY OF LANCASTER, MARK DALTON, MARK WILSON, KERRI KNEISLEY, AND CHRISTOPHER REED

## 42 U.S.C. SECTION 1983

66. The allegations of paragraphs 1 thru 65 are incorporated herein by reference.

67. Defendants conduct was committed under color of state law.

68. Defendants retaliated against the disabled Plaintiff and treated her differently on the basis of her sex and/or disability. Plaintiff was denied her rights under the Fourteenth Amendment for equal protection under the law.

69. Plaintiff's terms of employment with the Defendant County of Lancaster were in accordance with a bargaining agreement between Lancaster County Commissioners and the Court-Appointed Professional Employees Bargaining Unit/Teamsters Local Union #771. Plaintiff had a property interest in her job with the Defendant County of Lancaster.

70. Defendants acted in concert to harm the plaintiff and remove her from employment with the County of Lancaster. Defendants published falsehoods and false accusations of poor performance that hurt Plaintiff's reputation and liberty interests. Defendants violated Plaintiff's civil, liberty and property protections under Section 1983.

71. Plaintiff's speech to invoke her statutory rights and protections and initiate formal union grievance rights and protections pursuant to the Public Employee Relations Act constituted petitioning activity within meaning of the Petition Clause protected by the First Amendment.

72. Defendants denied the plaintiff equal protection, equal opportunity, and equal conditions of employment.

73. The actions and inactions by Defendants contravened Plaintiff's civil rights and protections, and otherwise, contravened Plaintiff's constitutional rights and protections pursuant to 42 U.S.C. Section 1983.

74. Defendants Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed together acted to conspire and violate Plaintiff's civil rights, interests and protections pursuant to 42 U.S.C. Section 1983.

75. The actions and inactions by Defendants were willful.

76. Defendants Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed are each liable to the plaintiff in so far as each acted individually on his/her own behalf.

77. As a result of the defendants' actions, the plaintiff suffered harm, losses and damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants County of Lancaster, Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed, and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and loss in benefits;

(B) Award Plaintiff compensatory damages for mental anguish, personal suffering, professional embarrassment and public humiliation;

(C) Award Plaintiff punitive damages from the individually named Defendants acting in his or her individual capacity;

(D) Award Plaintiff costs of this action and reasonable attorney's fees and costs, and;

(E) Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT II

## DEANNA BOWMAN V. COUNTY OF LANCASTER

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

78. The allegations of paragraphs 1 thru 77 are incorporated herein by reference.

79. The conduct of Defendant County of Lancaster described above constituted violations of Title VII of the Civil Rights Act of 1964, as amended.

80. The conduct of Defendant County of Lancaster described above was willful within the meaning of Title VII of the Civil Rights Act of 1964, as amended.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant County of Lancaster and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and loss in benefits;

(B) Award Plaintiff compensatory damages for mental anguish, personal suffering, professional embarrassment and public humiliation;

(C) Award Plaintiff costs of this action and reasonable attorney's fees and costs, and;

(D) Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT III

## DEANNA BOWMAN V. COUNTY OF LANCASTER

## AMERICANS WITH DISABILITIES ACT AS AMENDED

81. The allegations of paragraphs 1 thru 80 are incorporated herein by reference.

82. The conduct of Defendant County of Lancaster described above constituted violations of the Americans with Disabilities Act, as amended.

83. The conduct of Defendant County of Lancaster described above was willful within the meaning of the Americans with Disabilities Act, as amended.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant County of Lancaster and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and loss in benefits;

(B) Award Plaintiff compensatory damages for mental anguish, personal suffering, professional embarrassment and public humiliation;

(C) Award Plaintiff costs of this action and reasonable attorney's fees and costs, and;

(D) Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT IV

## DEANNA BOWMAN V. COUNTY OF LANCASTER

## FAMILY MEDICAL LEAVE ACT

84. The allegations of paragraphs 1 thru 83 are incorporated herein by reference.

85. The conduct by Defendant Count of Lancaster described above constituted violations of the Family Medical Leave Act.

86. The conduct by Defendant County of Lancaster described above was willful within the meaning of the Family Medical Leave Act.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant County of Lancaster and the Court:

(A)  Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and loss in benefits;

(B)  Award Plaintiff compensatory damages for mental anguish, personal suffering, professional embarrassment and public humiliation;

(C)  Award Plaintiff liquidated damages;

(D)  Award Plaintiff costs of this action and reasonable attorney's fees and costs, and;

(E)  Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT V

### DEANNA BOWMAN V. COUNTY OF LANCASTER, MARK DALTON, MARK WILSON, KERRI KNEISLEY, AND CHRISTOPHER REED

### PENNSYLVANIA HUMAN RELATIONS ACT

87. The allegations of paragraphs 1 thru 86 are incorporated herein by reference.

88. The conduct by Defendants described above constituted violations of the Pennsylvania Human Relations Act.

89. The conduct by Defendants described above was willful within the meaning of the Pennsylvania Human Relations Act.

90. Defendant Dalton, Defendant Wilson, Defendant Kneisley, and Defendant Reed were decision makers that aided and abetted discrimination against Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants County of Lancaster, Mark Dalton, Mark Wilson, Kerri Kneisley, and Christopher Reed, and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and loss in benefits;

(B) Award Plaintiff compensatory damages for mental anguish, personal suffering, professional embarrassment and public humiliation;

(C) Award Plaintiff costs of this action and reasonable attorney's fees and costs, and;

(D) Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

Date: 10/7/14

Respectfully submitted:

Nina B. Shapiro, Esquire
Attorney for Plaintiff Bowman
ID # 44040
53 North Duke Street, Suite 201
Lancaster, PA 17602
(717) 399-8720
bgdnbs@aol.com